PEOPLE ex rel. PARDEE v. COGGEY, Commissioner of Corrections.

(Supreme Court, Appellate Division, First Department. May 14, 1909.)

1. PRISONS (§ 18*)—PRISON MATRONS—COMPENSATION—GRADING AND CLASSIFYING.

By Laws 1903, pp. 1174, 1175, c. 511, §§ 715 to 717 were added to the New York City charter (Laws 1901, p. 32, c. 466). By section 715 matrons are to have charge of and supervise all women prisoners and all parts of prisons occupied by them or designated for their control. At least one matron shall be on duty in each prison as long as a woman prisoner is detained therein, and search all women visitors except as otherwise order-

ed. 'No other officer shall be admitted to the corridor or cells of the women prisoners without the consent of the officer in charge, and for each place where women prisoners may be detained the commissioner of corrections was authorized to appoint at least one woman and such others as may be necessary, to be known as "matrons." Section 716 provides that the matrons "may" be graded into three grades according to service in the department, and provides as to each grade that all matrons serving a specified number of years "may" be members thereof and shall receive a specified minimum amount annually. By section 717 all matrons and assistants, and all those, by whatever name known, who had performed duties set forth in section 715, for the preceding three years in the department, were appointed matrons and continued in office under that title. *Held*, that the act was mandatory, so far as it required women prisoners to be in the supervision of matrons, and the commissioner was bound to provide such matrons, but that, without action on the part of the commissioner, they were entitled in any event to the minimum amount provided by section 717, and no duty to grade them was imposed on him or on the board of aldermen, under the requirement as to fixing salaries of officers in section 56 of the charter (Laws 1901, p. 32, c. 466, as amended by Laws 1902, p. 1067, c. 435, § 1), which was not affected by section 716, except as to the minimum the matrons were to receive, and there was nothing in the act vesting any discretion in the commissioner or contemplating any discretionary act of his as to the grading or compensation of matrons who became city employés thereunder.

[Ed. Note.—For other cases, see Prisons, Dec. Dig. § 18.*]

2. MUNICIPAL CORPORATIONS (§ 67*)—LEGISLATIVE POWERS—APPOINTMENT TO MUNICIPAL POSITION.

New York City Charter, § 717, added to Laws 1901, c. 466, by Laws 1903, p. 1175, c. 511, § 1, by which prison matrons and assistants and persons performing duties as such for the preceding three years in the department of corrections were continued in office under that title, is not unconstitutional as an appointment by the Legislature to a municipal position.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 161; Dec. Dig. § 67.*]

3. MUNICIPAL CORPORATIONS (§ 220*)—REMEDY FOR FAILURE TO PAY CITY EMPLOYÉ.

If a city employé has not received the pay provided for by the charter, her remedy is by action against such city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 608; Dec. Dig. § 220.*]

Houghton, J., dissenting.

Appeal from Special Term, New York County.

Mandamus by the People, on the relation of Mary A. Pardee, against John V. Coggey, as Commissioner of Corrections of the City of New York. From an order denying a peremptory writ, relator appeals. Affirmed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

C. E. Hill and George M. Curtis, for appellant.
Theodore Connoly, for respondent.

INGRAHAM, J. The application was made upon the affidavit of the relator, stating that she was one of the matrons attached to the Harlem Prison, in the city and county of New York, having been

appointed on the 5th ·day of July, 1893, by ·the· commissioner of
charities and corrections of the city of New York, and had served
continuously since that time as such matron; that the relator was
receiving a salary of about $400 a year, which salary she has re-
ceived for the past 15 years; that by the grading of matrons, as pro-
vided for by section 716 of the charter of the city of New York (as
added to Laws 1901, p. 32, c. 466, by Laws 1903, p. 1175, c. 511, § 1),
the salary of the relator would be increased; and that she served a
demand upon the commissioner of corrections that he make gradation
and classification of matrons as required by this provision of the
charter—and upon that affidavit the relator obtained an order to show
cause why a peremptory writ of mandamus should not issue requiring
the commissioner to make such gradation and classification as re-
quired by said section. In reply to this application, the affidavit of
the commissioner of corrections was submitted, which stated that the
board of estimate and apportionment had fixed the salary of the rela-
tor at $400 per year, which amount has been paid to her; that on
July 16, 1903, the question as to whether this section of the charter
was mandatory was submitted to· the corporation counsel, who ad-
vised the defendant that he was justified in exercising his judgment
in regard to putting in operation the provision of this section, leaving
it to the court to decide, if necessary, whether the section was manda-
tory; and that, relying upon that opinion, he had taken no action in
the matter of carrying the provisions of this section into effect. The
court at Special Term denied the motion, upon the ground that there
was nothing in the statute under consideration which indicated that
the power conferred upon the respondent was other than permissive
and discretionary; and from the order denying the motion the relator
appeals.

By the amendment of the charter (chapter 511, p. 1174, of the
Laws of 1903) three sections were added, which provided for the
appointment of women who should be known as matrons. By section
715 the matrons were to—

"have charge of and supervision over. all women prisoners and all parts of
their respective prisons occupied by such women prisoners, or such parts there-
of as may be designated to come under their control by the officer in com-
mand thereof. At least one matron shall be on duty in each prison ·as long
as any woman prisoner is detained therein. Matrons shall also search all wo-
men visiting any part of such prisons, except as otherwise ordered by the
commissioner. No officer other than the matron shall be admitted to the
corridor or cells of the women prisoners without the consent of the officer in
charge of said prison."

And the commissioner of corrections was authorized to appoint for
each prison, jail, workhouse, or place of detention now or thereafter
under his jurisdiction, where women prisoners were detained, at
least one woman, and such other women as in his judgment might
be necessary, who should be known as "matrons." This appears to be
the first express provision authorizing the appointment of women to
this position. The act was mandatory, in so far as it required that
women prisoners should be in charge of and supervised by matrons,
one of whom should be on duty in each prison as long as any woman

prisoner was detained therein, and it was the duty of the commissioner to provide such matrons, so that the act could be complied with. It was plainly the object of this provision that thereafter women prisoners should be in charge of women jailers or attendants, who were to be known as "matrons."

Section 716 of the charter then provides:

"The matrons may be graded into three grades according to their years of service in the department of correction. All matrons who shall have served more than five years may be members of the first grade and shall receive not less than nine hundred dollars as annual pay or compensation; all matrons who shall have served not more than five nor less than three years may be members of the second grade, and shall receive not less than seven hundred and fifty dollars as annual pay or compensation; all matrons who shall have served less than three years may be members of the third grade and shall receive not less than six hundred dollars as annual pay or compensation; the pay or compensation above provided shall be payable monthly to each person entitled thereto."

The permissive word "may" is used throughout this section, rather than the more mandatory "shall"; but the section contains the only provision for the compensation of matrons whose appointment was provided for by section 915 of the charter, and the method of grading is evidently prescribed in order to fix the amount of compensation. The section applies to matrons generally, and is not confined to those who may be appointed by the commissioner under the authority granted to him by section 715. For the first time, as would appear, these matrons, whose duties were defined in section 715, became employés of the city, whose minimum compensation was expressly fixed by the Legislature. Prior to the insertion of these sections in the charter, under section 694 the commissioner of corrections had power within the limit of his appropriation to appoint and remove, subject to the requirements of the civil service laws, such superintendents, wardens, and other subordinate officers and assistants as may be necessary for the efficient performance of the duties of the department; and under section 56 of the charter (as amended by chapter 435, p. 1067, of the Laws of 1902), the board of aldermen, upon the recommendation of the board of estimate and apportionment, were required to fix the salary of every officer and person whose compensation is paid out of the city treasury, other than day laborers. This provision in regard to fixing salaries was not affected by section 716, except that a minimum was fixed, so that matrons who had served more than five years should receive not less than $900 per annum, matrons who had served not more than five nor less than three years should receive not less than $750 per annum, and matrons who had served less than three years should receive not less than $600 per annum.

It seems to me clear that these matrons would be entitled to receive the minimum compensation provided by section 716 of the charter, depending upon their years of service in the department, without action of the commissioner of corrections or the board of aldermen. The section provides that:

"The matrons may be graded into three grades according to their years of service in the department of correction."

There is no duty imposed upon the commissioner to grade the matrons in the service, nor upon the board of aldermen to make such grades. The statute says that the matrons "may be graded," and that all matrons who should have served more than five years "may be members of the first grade." There is no provision for matrons who have served more than five years in the department being in any other grade. The statute then provides that the members of the first grade "shall receive not less than nine hundred dollars as annual pay or compensation"; but there is no provision for any compensation for matrons who have served more than five years and who are not in the first grade. It seems to me clear that this statute is self-acting, and that under it, without action by the commissioner or the board of aldermen or other municipal authority, all matrons who have served in the department for more than five years become members of the first grade and are entitled to receive not less than $900 as annual pay or compensation, irrespective of any act of the commissioner or of the board of aldermen. The statute itself makes the grade; and, while the term "may" is used, there is no duty imposed upon the commissioner or the board of aldermen in relation to grading the matrons. The statute itself divides these matrons into three grades, and provides for a minimum compensation, and while undoubtedly the board of aldermen, on the recommendation of the board of estimate and apportionment, could fix their compensation at a sum greater than $900 per annum, the matrons of the first grade were absolutely entitled to the minimum rate fixed by section 716 of the charter, namely, $900 per year.

By section 717 of the charter all persons in the employ of the department of correction known as "matrons" or "assistant matrons," and all those, by whatever name known, who had performed the duties of matrons, as set forth in section 715, for the preceding three years in the department of correction, were appointed matrons and continued in office under that title. There is a point raised by the corporation counsel that this section is unconstitutional, as an appointment by the Legislature to a municipal position. I do not think, however, that the section is open to that objection. The effect of it was to continue in their positions those employés who had performed the duties imposed upon matrons, and to bring them within the provisions of sections 715 and 716 of the charter. It appears that the relator had been in the employ of the city as an assistant matron for upwards of 15 years. She therefore came within section 717, and continued in the employment of the city, was thereafter designated a "matron," and became entitled to be graded under section 716 as of the first grade, and under this section became entitled to the minimum compensation therein fixed of $900 per year.

It seems to me there is nothing in these three sections that vests any discretion in the defendant, or contemplates any discretionary act of his, affecting these persons in the employ of the city who became, under the provisions of these three sections, matrons, as to grading or compensation. Reading the three sections together, the intent of the Legislature seems to be clear. All persons in the employ of the city, who had performed the duties of matrons as prescribed by sec-

tion 715· of the charter, became the matrons provided for by that section, and by section 716 were graded into three grades according to their years of service in the department of correction. All those persons who had served more than five years became members of the first grade and were entitled to receive $900 as their annual pay, payable monthly to each person; and the relator, therefore, was entitled to such annual pay without further act of the commissioner, the board of aldermen, or the board of estimate and apportionment. If the relator has not received the pay provided for by this section of the charter, her remedy is by the ordinary method of an action against the city.

As nothing in the statute requires any affirmative act on the part of the defendant to entitle the relator to receive this compensation, the court below was right in refusing to grant a mandamus, and for that reason I think the order appealed from should be affirmed, but, under the circumstances, without costs. All concur, except HOUGHTON, J., who dissents.